## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. _____ |
| *ex rel.* VERITY INVESTIGATIONS, LLC, | **ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729** *et seq.* |
| *Plaintiff/Relator*, | |
| v. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| CELLMARK USA, LLC, *Defendant.* | **DO NOT PLACE IN PRESS BOX** |
| | **Jury Trial Demanded** |

1

## *QUI TAM* COMPLAINT

### I. INTRODUCTION

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $925 thousand (plus mandatory trebling) that Defendant wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that it was a small business concern. That loan was later forgiven, and the federal government paid the bill.

2. The loan in question was provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act." 15 U.S.C. § 636(a)(37).

3. In April 2020, the SBA authorized a first series of PPP loans, which are known as "First Draw" PPP loans.

4. This case involves a false application for a First Draw PPP loan.

5. The PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small."

6. For First Draw PPP loans, applicants were required to certify that they (both the applicant and its domestic and foreign affiliates) met the size standard—(a) collectively employed 500 or fewer persons, (b) met the SBA employee-based or revenue-based industry size standards, or (c) met the SBA alternative size standard that (i) the tangible net worth of the business is not more than $15 million and (ii) the average net income for two fiscal years before the date of the application is not more than $5 million.

2

7. Defendant falsely certified to the SBA that it met the size standard for a small business. As a direct result of those false statements, Defendant obtained a First Draw PPP loan totaling $925,525, which was later forgiven.

8. Relator is an outside investigative company that detected Defendant's fraud by reviewing the Defendant's affiliate's annual financial reports. Those reports demonstrate that Defendant and its affiliates (1) had a tangible net worth that far exceeds the $15 million threshold, (2) had an average net income for two fiscal years before the date of the application greater than $5 million, and (3) employed more than 500 employees during the relevant time period.

## II. THE PARTIES

9. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

10. Defendant CellMark USA, LLC is a Delaware corporation with its principal place of business in Shelton, Connecticut.

## III. JURISDICTION AND VENUE

11. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

12. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

13. Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant is "found" in this District. 31 U.S.C. § 3732(a).

## IV. THE FALSE CLAIMS ACT

14. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

3

15. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

16. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

17. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

18. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

19. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

20. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

21. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

22. The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States

Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

23. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

V.   NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

24. On information and belief, no "public disclosure" has been made of Defendant's false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

25. On information and belief, Defendant's fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

26. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

27. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendant's affiliate's annual financial reports, and (b) Defendant's false certifications for the First Draw PPP loan.

28. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI. THE FIRST DRAW PPP LOAN PROGRAM

29. To be eligible for a First Draw PPP loan, borrowers were required to meet one of the following criteria: "employs not more than the greater of (1) "500 employees;" or (2) "if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, . . . operates," 15 U.S.C. § 636(a)(36)(D); or (3) meets the "alternative size standard" as of March 27, 2020 with (a) "maximum tangible net worth of the applicant is not more than $15,000,000"; and (b) "the average net income after Federal income taxes (excluding any carry-over losses) of the applicant for the 2 full fiscal years before the date of the application is not more than $5,000,000." 15 U.S.C. § 632(a)(5).

30. The SBA's website explained "who may qualify" for a First Draw PPP loan. This was explained in an overview page of the website[1] and in the online "Frequently Asked Questions" document available on the website.[2]

31. The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[3]

32. That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[4]

33. That regulation defined affiliation broadly:

i. Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the CM Grouper to control more than 50 percent of the concern's voting equity. If no

---

[1] SMALL BUSINESS ADMINISTRTION, First Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan.
[2] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (as of April 29, 2020).
[3] SMALL BUSINESS and ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 2 (as of April 29, 2020).
[4] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

6

individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[5]

    ii.    Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[6]

    iii.    Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[7]

    iv.    Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that

---

[5] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[6] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[7] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[8]

    v.    Affiliation may arise "based on franchise and liceCM USA agreements:" "The restraints imposed on a franchisee or liceCM USAe by its franchise or liceCM USA agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or liceCM USAe provided the applicant franchisee or liceCM USAe has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or liceCM USA agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[9]

34.    The SBA required borrowers to submit a First Draw borrower application form (SBA Form 2483) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

35.    The SBA Form 2483 required the borrower to state its "Number of Employees."

36.    The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant . . . employs no more than the greater of 500 or [*sic*] employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."

37.    The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I

---

[8] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)."

38. The SBA Form 2483 also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

39. The SBA guaranteed 100% of the outstanding balance of Defendant's First Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII. DEFENDANT FALSELY CERTIFIED TO THE SBA ITS COMPLIANCE WITH THE FIRST DRAW PPP LOAN SIZE REQUIREMENTS

### A. BACKGROUND: DEFENDANT CELLMARK USA, LLC AND ITS AFFILIATES

40. Defendant CellMark USA, LLC ("CM USA") is a Delaware corporation with its principal place of business located at Shelton, Connecticut.[10]

41. CM USA can be validly served with process via their registered agent at 251 Little Falls Drive, Wilmington, DE 19808.

42. CM USA is part of CellMark AB ("CM GROUP"). CM GROUP is an independent sales solutions company connecting suppliers and customers.[11]

43. CM GROUP's 2020 financial report indicates that the following companies are part of CM GROUP as of 2020, including:[12]

---

[10] Delaware, Department of State, *Details for CellMark USA, LLC*, https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx.
[11] CM GROUP's Website – Company, https://www.cellmark.com/about/our-company/.
[12] CellMark AB, *CellMark Financial Summary 2020*, Pages 68-71, taken from https://www.cellmark.com/tag/annual-report/.

    i. CellMark Asia Pte Ltd, located in Thailand;

    ii. CellMark Thailand Co Ltd., located in Thailand;

    iii. CellMark Vietnam Company Limited, located in Vietnam;

    iv. CellMark Raw Materials AB Rep Office, located in Hong Kong;

    v. CellMark Asia Pte Ltd, located in Indonesia;

    vi. CellMark Asia Pte Ltd, located in Malaysia;

    vii. CellMark AB, Rep Office, located in Pakistan;

    viii. CellMark India Pvt Ltd, located in India;

    ix. CellMark Shanghai Co Ltd, located in China;

    x. CellMark Asia Pte Ltd, Qingdao Rep Office, located in China;

    xi. CellMark Korea Co Ltd, located in South Korea;

    xii. CellMark AB, Shanghai Rep Office, located in China;

    xiii. CellMark Asia Pte Ltd, located in Singapore;

    xiv. NorCell Asia, located in Singapore;

    xv. CellMark Australia Pty Ltd, located in Australia;

    xvi. CellMark Asia Pte Ltd Taiwan Rep Office, located in Taiwan;

    xvii. CellMark Japan, located in Japan;

    xviii. CellMark Kimya Tic AS, located in Turkey;

    xix. CellMark Hellas Single Member S.A., located in Greece;

    xx. CellMark Iberica SL, located in Spain;

    xxi. CellMark Deutschland GmbH, located in Germany;

    xxii. CellMark SA, located in Switzerland;

    xxiii. CellMark Belgium NV, located in Belgium;

xxiv. CellMark AB, located in Sweden;

xxv. CellMark Basic Materials Rep Office, located in the Netherlands;

xxvi. CellMark AB Rep Office, located in Poland;

xxvii. CellMark AB Rep Office, located in Serbia;

xxviii. CellMark Deutschland GmbH, located in Poland;

xxix. CellMark UK Ltd, located in the United Kingdom;

xxx. CellMark Netherlands B.V., located in the Netherlands;

xxxi. CellMark Iberica, S.L. Madrid, located in Madrid;

xxxii. CellMark Italy Srl, located in Italy;

xxxiii. CellMark AB Rep Office, located in Norway;

xxxiv. CellMark France SAS, located in France;

xxxv. CellMark Papier SAS, located in France;

xxxvi. CellMark Chemicals Ltd, located in the United Kingdom;

xxxvii. CellMark Raw Materials AB, located in Sweden;

xxxviii. CellMark Middle East LLC, located in the UAE;

xxxix. CellMark Inc. Rep Office, located in New Zealand;

xl. CellMark Inc, located in the United States;

xli. Birmingham Recycling & Recovery LLC, located in the United States;

xlii. Semper/Exeter Paper Co Ltd, located in the United States;

xliii. Sunset Trading, located in the United States;

xliv. Jamaica Recycles, International Recycling & Reclamation Ltd., located in Jamaica;

xlv. Charleston Recycling Services, LLC, located in the United States;

 xlvi. CellMark Paper, SA DE CV, located in Mexico;

 xlvii. CellMark Paper Inc, located in the United States;

 xlviii. CellMark USA LLC, located in the United States;

 xlix. Urban Impact Recycling Ltd, located in Canada;

 l. Rocky Mountain Recycling Services, LLC, located in the United States;

 li. NorCell Inc, located in the United States;

 lii. Cascell Trading Group, located in Canada;

 liii. CellMark Paper Canada Inc, located in Canada;

 liv. Paper Tube & Core, located in the United States;

 lv. CellMark AB Rep office, located in Colombia;

 lvi. CellMark AB Rep office, located in Brazil; and

 lvii. CellMark Paper Peru SRL, located in Peru.

44. On information and belief, Defendant CM USA, CM GROUP, and the other entities listed in ¶ 43, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

**B. CM USA'S FALSE STATEMENTS TO OBTAIN PPP LOAN**

45. In 2020, CM USA submitted a borrower application for a First Draw PPP loan.

46. CM USA submitted its borrower application, SBA Form 2483, to PCSB Bank at 2477 Rte 6, Brewster, NY 10509.

47. In its SBA Form 2483, CM USA listed its address as 2 Corporate Drive Ste 540, Shelton, CT 06484.

48. In its SBA Form 2483, CM USA certified that it and its affiliates met the small business size standard by having (1) no more than 500 employees, (2) meeting the SBA industry size standards, or (3) meeting the SBA alternative size standard.

49. CM USA is classified under NAICS code 424690 for the purposes of its First Draw PPP loan, which covers the industry for Other Chemical and Allied Products Merchant Wholesalers. The SBA industry size standard for NAICS code 424690 is 150 employees. *See* 13 C.F.R. § 121.201 (effective Nov. 20, 2019 to May 1, 2022).

50. In its SBA Form 2483, CM USA represented that it and its affiliates had 54 employees—under the 500-employee limit and the 150-employee SBA industry size standard needed to be eligible to apply.

51. CM USA's certification in SBA Form 2483 that it met the size standards for a First Draw PPP loan was false. CM USA and its affiliates had (1) far more than 500 employees in 2019 and 2020; (2) a maximum tangible net worth far more than $15,000,000; and (3) an average net income for two fiscal years before the date of the application greater than $5 million.

52. CM USA deliberately ignored the fact that, together with its affiliates, it did not meet the SBA size standards for obtaining a First Draw PPP loan. CM USA signed its false SBA Form 2483 with knowledge of, or reckless disregard for, the truth.

53. On or about May 22, 2020, CM USA was approved for a First Draw PPP loan in the amount of $925,525 by lender PCSB Bank.

54. The U.S. government paid lender PCSB Bank a lender's processing fee of 3% of the $925,525 loan, in the amount of $27,765.75.[13]

55. On or about April 19, 2021, the U.S. government forgave 100% of CM USA's First Draw PPP loan, plus interest, in the amount of $933,829.02.

---

[13] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

### C. EVIDENCE OF NUMBER OF EMPLOYEES

56. In its SBA Form 2483, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

57. CM GROUP's website indicates that Defendant's corporate group collectively had an average of 794 employees in 2019 and an average of 818 employees in 2020, as shown in the following image:[14]

# Key Financial Figures

Key Financial Figures for The CellMark Group (MUSD*)

|  | 2023 | 2022 | 2021 | 2020 | 2019 |
|---|---|---|---|---|---|
| Tonnage ('000 tons) | 7 717 | 7 313 | 7 149 | 6 761 | 6 793 |
| Operating Revenue | 3 608 | 4 251 | 3 675 | 2 458 | 2 944 |
| Profit after Financial Items | 45.4 | 91.7 | 75.7 | 20.9 | 19.7 |
| Average Number of Employees | 1 006 | 1 194 | 1 053 | 818 | 794 |
| Equity Ratio (%) | 21.9 | 19.2 | 20.1 | 22.5 | 21.8 |

*Millions of US Dollars

58. If Defendant CM USA had counted its affiliates' employees in its First Draw PPP loan application, it would have reported far more than the 500-employee limit in its application.

59. On information and belief, Defendant's and its affiliates' payroll records from 2019 and 2020 will confirm what Defendant always knew—that it and its affiliates collectively employed well over 500 employees throughout the time period 2019–2020.

---

[14] CELLMARK GROUP'S Website – Key Figures, https://www.cellmark.com/about/key-financial-figures/.

14

**D. EVIDENCE OF TANGIBLE NET WORTH & AVERAGE NET INCOME GREATER THAN THE ALTERNATIVE SIZE STANDARD**

60. Defendant was not eligible for First Draw PPP loans under the SBA's alternative size standard. That standard required Defendant to show that it and its affiliates had <u>both</u> (i) tangible net worth of not more than $15 million, <u>and</u> (ii) average net income of less than $5 million for the two fiscal years before the date of Defendant's 2020 application for a First Draw PPP loan.

61. Defendant and its affiliates had a maximum tangible net worth of more than $15 million in FY 2019 and FY 2020. The 2020 financial report for Defendant's parent company CM GROUP demonstrates a maximum tangible net worth of approximately **$172.18 million** in FY 2019 and **$184.77 million** in FY 2020.[15] These figures are far above the $15 million dollar threshold.

| Unit: USD (in Thousands) | As of December 31, 2020 | As of December 31, 2019 |
|---|---|---|
| **Total Assets** | **817,821** | **793,725** |
| Less: Current Liabilities | (610,816) | (602,221) |
| Less: Long-term Liabilities | (4,616) | (2,120) |
| **Net Worth** | **202,389** | **189,384** |
| Less: Intangible Assets | (7,031) | (5,689) |
| Less: Deferred Tax Assets | (10,593) | (11,520) |
| **Tangible Net Worth (USD)** | **184,765** | **172,175** |

62. Given this tangible net worth, Defendant could not have qualified for a First Draw PPP loan under the SBA's alternative size test.

63. Defendant and its affiliates had an average net income of more than $5 million for FY 2018 and FY 2019. The 2018 financial report for Defendant's parent company CM GROUP indicates the companies in the Defendant's corporate group collectively generated $14.64 million

---

[15] CellMark AB, *CellMark Financial Summary 2020*, Page 53, taken from https://www.cellmark.com/tag/annual-report/.

of net profit in FY 2018.[16] The 2020 financial report for Defendant's parent company CM GROUP indicates the companies in the Defendant's corporate group collectively generated $12.40 million of net profit in FY 2019.[17]

64. Therefore, Defendant's corporate group collectively generated an average of **$13.52 million** in net income for the two fiscal years before the date of Defendant's 2020 First Draw PPP loan application. This figure is far above the $5 million dollar threshold.

65. Given this average net income, Defendant could not have qualified for a First Draw PPP loan under the SBA's alternative size test.

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

66. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

67. Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender claims for approval of a First Draw PPP loan.

68. The Defendant's knowingly false claim in its SBA Form 2483 was material to the lender's decisions to issue the First Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

69. But for Defendant's knowingly false claims, the lender would not have issued the loan and the SBA would not have forgiven them.

---

[16] CellMark AB, *CellMark Financial Summary 2018*, Page 38, taken from https://www.cellmark.com/tag/annual-report/.
[17] CellMark AB, *CellMark Financial Summary 2020*, Page 52, taken from https://www.cellmark.com/tag/annual-report/.

70. The First Draw PPP loan that Defendant obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

71. The First Draw PPP loan that Defendant obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

72. The Government later reimbursed the lender 100% of the amounts of Defendant's First Draw PPP loan, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

73. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

74. Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, its SBA Forms 2483 and included certification—to support false claims submitted to the lender for approval of a First Draw PPP loan.

75. Defendant's knowingly false records and statements were material to the lender's decisions to issue the First Draw PPP loan and were material to the SBA's decision to forgive the loan and repay the lender.

76. But for Defendant's knowingly false records and statements, the lender would not have issued the loan and the SBA would not have forgiven it.

## THIRD CAUSE OF ACTION

### Improperly Avoiding an Obligation to Pay or Transmit Money
### 31 U.S.C. § 3729(a)(1)(G)

77. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

78. Defendant violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding Defendant's obligation to pay or transmit money to the SBA—namely, the money Defendant received from the SBA in forgiveness for Defendant's First Draw PPP loan.

79. Defendant knew it improperly received money from the SBA when the SBA forgave Defendant's First Draw PPP loan.

80. Defendant had an obligation to pay back the SBA the full amount Defendant received in forgiveness of the First Draw PPP loan.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendant for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven First Draw PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Date: May 15, 2025

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*